ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ 2025-063A

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**FRANCISCO HERNÁNDEZ RODRÍGUEZ**<br><br>Apelante | TA2025AP00476 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Criminal Núm.: **D VI2025G0014**<br><br>Sobre: Art. 93 (A) Código Penal |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparece ante nos el señor Francisco Hernández Rodríguez (Sr. Hernández Rodríguez o Apelante), mediante recurso de *Apelación* presentado el 24 de octubre de 2025. Nos solicitó la revocación de la *Sentencia* emitida y notificada el 30 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] Mediante dicho dictamen, el foro primario condenó al Sr. Hernández Rodríguez a una pena de noventa y nueve (99) años de reclusión, al amparo del Artículo 93(A) del Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5142, en el caso D VI2025G0014, a cumplirse de manera concurrente con la pena impuesta en el caso D OP2025G0011, y de forma consecutiva con las penas impuestas en los casos D LA2025G0041 y D LA2025G0042 y con cualquier otra que estuviese cumpliendo. Además, le impuso el pago de la

---

[1] Véase Sistema Unificado de Manejo y Administración de Casos (SUMAC) TA, Entrada Núm. 1, Anejo 1.

pena especial de $300.00 conforme al Artículo 61, 33 LPRA sec. 5094.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

**I.**

El caso de marras tiene su génesis el 11 de diciembre de 2023, cuando el Ministerio Público acusó al Sr. Hernández Rodríguez por infringir el Artículo 93(A) y el Artículo 249 del Código Penal y el Artículo 6.05 y 6.14A de la Ley Núm. 168-2019, conocida como Ley de Armas, 25 LPRA sec. 461 *et seq* (Ley de Armas). En síntesis, se imputó al Apelante que, allá en o para el 28 de noviembre de 2021, le ocasionó la muerte al señor Alvin Martínez Rivera (Sr. Martínez Rivera) utilizando un arma de fuego con la cual realizó varios disparos.

Tras múltiples trámites procesales, el foro primario celebró el Juicio en su fondo los días 14, 21 y 22 de julio de 2025. Por su parte, el Ministerio Público presentó los testimonios de las siguientes personas: el señor Christian Chayanne Vázquez Rosado (Sr. Vázquez Rosado); el agente Daniel Chico Ruiz (Agte. Chico Ruiz); el agente Charlie Hernández Rodríguez (Agte. Hernández Rodríguez); la agente Harley Irizarry Cancel (Agte. Irizarry Cancel); la señora Elsie Mariel Martínez Rivera (Sra. Mariel Martínez Rivera); el agente Leonel Albino Ríos (Agte. Albino Ríos); el agente Aníbal Ayala Arocho (Agte. Ayala Arocho) y el agente Agte. William Lugo Rodríguez (Agte. Lugo Rodríguez). Del mismo modo, se presentó prueba documental.

Luego de analizar la prueba presentada, el 24 de julio de 2025, el Jurado emitió un veredicto de culpabilidad por los delitos antes mencionados. Consecuentemente, el 30 de septiembre de 2025, el TPI dictó la *Sentencia* en la que condenó al Sr. Hernández Rodríguez a una pena de noventa y nueve (99) años de reclusión, al amparo del Artículo 93(A), *supra*, en el caso D VI2025G0014, a cumplirse de

manera concurrente con la pena impuesta en el caso D OP2025G0011, y de forma consecutiva con las penas impuestas en los casos D LA2025G0041 y D LA2025G0042 y con cualquier otra que estuviese cumpliendo. Además, le impuso el pago de la pena especial de $300.00 conforme al Artículo 61, *supra*.

Inconforme, el 24 de octubre de 2025, el Sr. Hernández Rodríguez radicó la *Apelación Criminal* ante nos y expuso los siguientes señalamientos de error:

> **ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SUS INSTRUCCIONES AL JURADO, PROVOCANDO QUE RECAYERA UNA SENTENCIA DE CULPABILIDAD EN EL PRESENTE CASO, CUANDO DE LA PRUEBA ADMITIDA SURGIA PRUEBA EXCULPATORIA EN CUANTO A LA GRAVEDAD DEL DELITO.**
>
> **ERRO EL JURADO AL EMITIR UN FALLO CONTRADICTORIO EN UNA DE LAS BOLETAS DEL VEREDICTO DEL JURADO, DONDE SE MARCO EL VEREDICTO DE NO CULPABLE Y CULPABLE SIMULTANEAMENTE, LO CUAL IMPLICA UN VEREDICTO DE NO CULPABILIDAD.**
>
> **ERRO EL TRIBUNAL AL NO INSTRUIR AL JURADO QUE EL ACUSADO TIENE DERECHO A DECLARAR A SU FAVOR.**
>
> **ERRO EL JURADO AL INTERPRETAR EL TESTIMONIO DEL SR. CHRISTIAN VAZQUEZ ROSARIO, CUYO CONTENIDO DEMOSTRO LA EXISTENCIA DE UNA LEGITIMA DEFENSA Y/O CAUSAS ATENUANTES DE UN DELITO MENOR INCLUIDO.**

Luego de darse por sometida la Transcripción de Prueba Oral sobre el juicio celebrado ante el TPI,[2] el Sr. Hernández Rodríguez presentó ante nos el *Alegato Suplementario del Apelante* donde reiteró los mismos planteamientos de error.[3]

Por su parte, el 11 de mayo de 2026, El Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico, (El Pueblo) presentó el *Alegato de el Pueblo de Puerto Rico*.[4]

---

[2] *Íd.*, Entrada Núm. 26.
[3] *Íd.*, Entrada Núm. 28.
[4] *Íd.*, Entrada Núm. 30.

Así, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

**II.**

**A.**

En nuestro ordenamiento jurídico, se otorga gran deferencia a a las determinaciones de hecho, la apreciación de prueba testifical y las adjudicaciones de credibilidad que realiza el juzgador del foro primario. *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020). Los foros apelativos venimos obligados a prestar deferencia a la apreciación realizada por un juez o un panel de jurados, pues tienen el privilegio de oír la prueba testifical presentada ante sí y evaluar el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez,* 213 DPR 895, 914 (2024). Señala Luis Rivera Román que:

> En los casos criminales, la regla general dispone que, al evaluar el fallo o veredicto recaído, en la medida que los Jueces de instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba presentada, su apreciación merecerá gran deferencia y los tribunales apelativos no intervendrán con esta en ausencia de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique. L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones* en *Perspectivas en la práctica apelativa*, San Juan, Ediciones SITUM, 2018, pág. 106.

Dicho estándar de revisión requiere que para que los tribunales apelativos podamos sustituir el criterio del tribunal sentenciador, deben existir "circunstancias extraordinarias en las que **se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho**". *Íd.* (Énfasis nuestro). Un tribunal actúa con pasión, prejuicio o parcialidad cuando está "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala

e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra,* pág. 782. Para determinar si el tribunal de instancia actuó con pasión, prejuicio o parcialidad, no estamos limitados a lo sucedido durante el juicio, sino podemos tomar en consideración conductas previas y posteriores a la determinación judicial. *Íd.*, pág. 788.

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios:

> [E]l juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente. *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

"Por último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble'". *Pueblo v. Rivera Montalvo, supra,* pág. 374. (citando a *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002)). Cabe destacar que, un tribunal apelativo también incurre "en abuso de discreción si sustituye el criterio de apreciación de la prueba realizado por el juzgador de los hechos en el foro de instancia, o las determinaciones de hechos realizadas por este, sin haber mediado prejuicio, parcialidad, pasión o error manifiesto". *Pueblo v. Negrón Ramírez, supra,* págs. 913-914.

**B.**

El acusado tiene derecho a que se impartan instrucciones sobre todos los aspectos del derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad. *Pueblo v. Negrón Ayala*, 171 DPR 406, 415 (2007)

*(citando a Pueblo v. Acevedo Estrada,* 150 DPR 84 (2000)). **Las instrucciones al Jurado deben incluir los elementos del delito imputado, así como los delitos inferiores al imputado o aquellos comprendidos en él "siempre y cuando la prueba así lo justifique".** *Pueblo v. Negrón Ayala, supra,* pág. 415. (Énfasis suplido). Es decir, no se transmitirá de forma automática la instrucción sobre un delito inferior sin la existencia de evidencia que permita al Jurado "inferir razonablemente que el acusado es culpable del delito inferior". *Íd.* **Así las cosas, un juez actúa correctamente al denegar una instrucción sobre el delito menor incluido, si estima que la evidencia resulta insuficiente en derecho para establecer la comisión del delito, aun pudiendo ser creída por el Jurado.** *Íd.,* pág. 416. (Énfasis suplido).

Es imprescindible que un Jurado cuente con las instrucciones apropiadas al momento de aquilatar la prueba, solo así se rendirá un veredicto justo. *Pueblo v. Acevedo Estrada, supra,* pág. 95. "La pauta general en torno a instrucciones al Jurado impone que se cubran los *elementos esenciales de las defensas presentadas por el acusado, así como los aspectos de derecho que, bajo cualquier teoría razonable, pudieran estar presentes en las deliberaciones". Íd.,* págs. 94-95.

El Tribunal Supremo de Puerto Rico, ha expresado que la utilización del libro de instrucciones es discrecional. *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299 (1991). No obstante, ha reconocido que constituye una buena práctica su utilización en aras de disminuir las posibilidades de error en las instrucciones al jurado y de lograr mayor uniformidad en la administración de la justicia criminal. *Íd.* Las instrucciones que son impartidas según el manual están cobijadas por una presunción de corrección. *Pueblo v. Colón González,* 209 DPR 967, 987-988 (2022). Por lo tanto, se debe demostrar en efecto que la instrucción es errónea. *Pueblo v. Ortiz*

*González,* 111 DPR 408 (1981). Es decir, a la hora de —determinar la corrección o incorrección de las instrucciones— hay que considerarlas en su totalidad y no por frases aisladas. *Pueblo v. Echevarría Rodríguez I, supra.*

Existe la probabilidad de error cuando el Jurado recibe instrucciones erróneas o cuando el Juez se niega a impartir una instrucción especial que es procedente en derecho. *Pueblo v. Acevedo Estrada, supra,* págs. 101-102. **El Tribunal Supremo estableció que procede la revocación de la convicción "si el error en las instrucciones impartidas o en las omitidas por el tribunal son de tal naturaleza que de no haberse cometido probablemente el resultado del juicio hubiera sido distinto o que el error cometido violara derechos fundamentales o sustanciales del acusado.** *Pueblo v. Miranda Santiago,* 130 DPR 507, 520-521 (1992) *(citando a Pueblo v. Torres Rodríguez,* 119 D.P.R. 730, 740 (1987)). (Énfasis suplido). En ese sentido, el Tribunal Supremo ha sugerido que es buena práctica ajustar las instrucciones al jurado conforme al Manual de Instrucciones al Jurado. *Pueblo v. Velázquez Caraballo,* 110 DPR 369 (1980). Es decir, si el tribunal comete un error al impartir las instrucciones al jurado, ello no acarrea la revocación automática de una sentencia, si el error no es perjudicial o no se demuestra que violara derechos fundamentales o sustanciales del acusado. *Pueblo v. Torres Rodríguez,* 119 DPR 730, 740 (1987).

Como tribunal apelativo, es necesario determinar la posible influencia que pueda tener **una instrucción solicitada y no ofrecida** en la mente del Jurado. *Pueblo v. Acevedo Estrada, supra,* pág. 97. (Énfasis suplido). Nos parece pertinente citar el caso *Pueblo v. González Colón,* 110 DPR 812, 815 (1981), en donde el Tribunal Supremo razonó que:

La omisión de dar instrucciones sobre el delito de homicidio voluntario, **solicitadas oportunamente por la defensa**, constituye en este caso un error tan perjudicial que viola la garantía fundamental de un juicio justo y que, en consecuencia, obliga a la revocación de las sentencias dictadas contra los apelantes por el delito de asesinato en primer grado y a la celebración de un nuevo juicio. (Énfasis suplido).

Particularmente, la Regla 137 de las Reglas de Procedimiento Criminal disponen que:

Cualquiera de las partes podrá presentar al tribunal una petición escrita de que se den determinadas instrucciones, al terminar el desfile de la prueba, o anteriormente si el tribunal razonablemente así lo ordena. Deberá servirse copia de dicha petición a la parte contraria. El tribunal podrá aceptar o rechazar cualquiera o todas dichas peticiones, anotando debidamente su decisión en cada una, e informará a las partes de su decisión antes de que [e]stas informen al jurado. **Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud.** Se le proveerá oportunidad para formular [e]stas fuera de la presencia del jurado. El tribunal procederá entonces a resolver la cuestión, haciendo constar su resolución en el expediente o trasmitiendo cualquier instrucción adicional que estimare pertinente. 34 LPRA Ap. II, R. 137. (Énfasis suplido).

A esos efectos, el Tribunal Supremo ha enfatizado que, **resulta "tardío un planteamiento en apelación impugnando las instrucciones del juez al jurado** cuando la defensa no objeta dichas instrucciones **ni solicita instrucciones adicionales".** *Pueblo v. Romero Cuesta*, 101 DPR 404, 408 (1973) *(citando a Pueblo v. Torres Rolón*, 99 DPR 970 (1971)). (Énfasis suplido). Inclusive, si no se hace alguna objeción, aunque fuera de carácter general a las instrucciones transmitidas, "se renuncia a cualesquiera errores en ellas que no lesionen sus derechos fundamentales". *Íd. (citando a Pueblo v. Del Valle*, 91 DPR 174 (1964)).

### C.

En nuestro ordenamiento jurídico, según dispone el Código Penal de Puerto Rico, el asesinato es "dar muerte a un ser humano

a propósito, con conocimiento o temerariamente". 33 LPRA sec. 5141. Específicamente, se considera asesinato en primer grado "Todo asesinato perpetrado por medio de veneno, acecho, tortura, estrangulamiento, sofocación o asfixie posicional, o a propósito o con conocimiento". 33 LPRA sec. 5142. Así las cosas, "se agrupan en la definición de "asesinato" todas aquellas modalidades en las que exista la intención de matar". *Pueblo v. Roche*, 195 DPR 791, 797 (2016).

Por otro lado, el asesinato atenuado se define como "[t]oda muerte causada a propósito, con conocimiento o temerariamente, que se produce como consecuencia de una perturbación mental o emocional suficiente para la cual hay una explicación o excusa razonable o súbita pendencia". 33 LPRA sec. 5144. Este delito, presupone que el autor actuó movido por una provocación adecuada de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actuar según sus impulsos mentales causados por la cólera, pendencia o emoción violenta. *Pueblo v. Negrón Ayala*, 171 DPR 406, 417 (2007). Es decir, si no existe una provocación, o habiendo existido no es lo suficientemente grave y la actuación del acusado está fuera de toda proporción con el grado de provocación, el acto de dar muerte constituye un asesinato. *Pueblo v. Lebrón*, 61 DPR 657, 667 (1943). Para que ocurra este delito deben existir tres factores:

> (1) la muerte haya ocurrido mientras el actor se encontraba en un arrebato de cólera o de pendencia súbita (heat of passion); (2) la muerte esté precedida de una provocación adecuada, y (3) la muerte ha ocurrido antes de que el arrebato o pendencia sufrida por el actor se hubiere razonablemente "enfriado" (cooling off period). *Pueblo v. Negrón Ayala*, 171 DPR 406, 418 (2007).

Precisamente, el asesinato y el homicidio se distinguen por los elementos de malicia y deliberación. *Pueblo v. Rosario*, 160 DPR 592, 612 (2003). Empero, para determinar si procede la instrucción sobre

el homicidio voluntario se debe evaluar si se presentó prueba que lo justifique o haga mandatoria, independientemente del hecho de la existencia de malicia y premeditación. *Pueblo v. Rosario*, 160 DPR 592, 612 (2003). Cabe destacar que no es necesario que la prueba resulte incontrovertida o concluyente, mientras haya un indicio de prueba a ese efecto. *Pueblo v. Galarza*, 71 DPR 557, 561 (1950).

### D.

La Regla 151 de Procedimiento Criminal establece que

> Cuando el jurado hubiere rendido un veredicto**, a requerimiento de cualquier parte o a instancias del propio tribunal, tal veredicto deberá ser comprobado en cuanto a cada miembro del jurado.** Si como resultado de esta comprobación se determinare que el veredicto no fue rendido, al menos, por nueve miembros del jurado, se le podrá ordenar al mismo retirarse a continuar sus deliberaciones o podrá ser disuelto. 34 LPRA Ap. II, R. 151. (Énfasis suplido).

El propósito de esta Regla es sostener la garantía de que el veredicto anunciado es el verdadero y que ninguno ha sido coaccionado. *Pueblo v. Ruiz Torres*, 99 DPR 830, 831-832 (1971). Cabe resaltar que, la Regla no permite que cada miembro del jurado revele cómo voto sino auscultar si esta era la intención del Jurado. *Íd.* Esto constituye la oportunidad del Jurado para protestar si el veredicto anunciado no corresponde a lo acordado. *Íd.* Ahora bien, la jurisprudencia establece que "**el Tribunal tiene discreción en cuanto a la forma de hacer la comprobación**". *Íd.* (Énfasis suplido). Resulta preciso señalar que la Regla no dispone de un procedimiento específico sobre cómo auscultar la votación del Jurado. *Informe de las Reglas de Procedimiento Criminal*, Vol. 2 (2008). Ahora bien, el acusado debe solicitar oportunamente la comprobación o *polling* individual de cada uno de los miembros del Jurado previo a que sea pronunciado el fallo. *Jaca Hernández v. Delgado*, 82 DPR 402 (1961).

**E.**

Nuestra Constitución, al igual que la de los Estados Unidos, garantiza el derecho de todo ciudadano contra la autoincriminación. Art. II, Sec. 11, Const. P.R.; Emda. V, Const. EE.UU., LPRA, Tomo 1. El derecho a no auto incriminarse se activa cuando el Estado obliga a una persona a incriminarse mediante su propio testimonio. *Pueblo v. Sustache Torres*, 168 DPR 350 (2006). Sin embargo, no es de aplicación cuando el Estado pretende obtener evidencia física o real. *Íd.*

Específicamente, sobre la sección 3.26, silencio de la persona acusada, el Libro de Instrucciones al Jurado dispone que:

> Nuestra Constitución y la Quinta Enmienda de la Constitución de Estados Unidos establecen el derecho de un(a) acusado(a) a no declarar y a que su silencio no pueda tenerse en cuenta ni comentarse en su contra. Ustedes deben tener presente en sus deliberaciones que el (la) acusado(a) tiene el derecho a declarar o a no hacerlo, según su deseo. También deben tener presente siempre que el hecho de no haber declarado no puede considerarse como un indicio o una aceptación de culpabilidad. Recuerden en todo momento, en sus deliberaciones, que a pesar de que el (la) acusado(a) no haya declarado, el Ministerio Público tiene la obligación de probar su culpabilidad más allá de duda razonable.

En lo pertinente sobre las inferencias, la disposición 1.2 Función del Jurado, el Libro de Instrucciones al Jurado establece que el Jurado "no puede inferir, considerar ni especular que por esa razón es más probable que la persona acusada sea culpable o no culpable". Del mismo modo, la instrucción 3.1 reza "Ustedes pueden llegar a las conclusiones e inferencias razonables que estén justificadas a base de su propia experiencia y que surjan de los hechos que ustedes consideren o estimen probados".

**III.**

En el caso que nos ocupa, el Apelante nos solicita la revocación de la Sentencia emitida el 30 de octubre de 2025, mediante la cual fue declarado culpable por los delitos de asesinato, portación y uso de un arma de fuego. En síntesis, el Sr. Hernández

Rodríguez señaló que el TPI erró: (1) al impartir las instrucciones al jurado en cuanto a la gravedad del delito; (2) al emitir un fallo contradictorio en una boleta marcada simultáneamente; (3) al no instruir al Jurado sobre el derecho del acusado de declarar a su favor; y (4) al Jurado interpretar que el testimonio vertido en corte, el cual demostró la existencia de una legítima defensa y/o causas atenuantes de un delito menor incluido.

Por estar íntimamente relacionados, discutiremos el **primer** y **cuarto** error de manera conjunta. El Sr. Hernández Rodríguez plantea que, a pesar de que el Tribunal impartió las instrucciones sobre legítima defensa a solicitud de la defensa, las instrucciones estuvieron viciadas. El Apelante explicó que el juzgador de instancia impartió instrucciones dirigidas a que es el Estado quien tiene la carga de probar todos los hechos más allá de duda razonable. Por otro lado, señaló que el juzgador de instancia se limitó a informar los elementos de legítima defensa. Ahora bien, el Apelante argumenta que incidió por darle a entender al Jurado que debía determinar si el Estado no probó su caso más allá de duda razonable y que este actuó en defensa propia o que se determine culpable por asesinato en primer grado. Insiste en que, al así actuar, el TPI le negó la oportunidad de informar sobre otros delitos inferiores como el asesinato en segundo grado o asesinato atenuado. El Apelante agregó que, aunque se impartieron instrucciones sobre temeridad, no se realizó al amparo del Art. 249 del Código Penal.

Por su parte, el Procurador General sostiene que del récord no surge que la defensa solicitara alguna instrucción referente al asesinato atenuado o asesinato en segundo grado. Asimismo, apunta que, al concluir con las instrucciones, el tribunal les preguntó a las partes si tenían alguna objeción, a lo cual ambas partes contestaron en la negativa. De modo que, al no objetar las instrucciones impartidas en ese momento, el Apelante renunció a

cualquier planteamiento de error en cuanto a estas. Además, argumenta que, de la prueba presentada tampoco se justifica que el foro primario impartiera instrucciones sobre el delito de asesinato atenuado o asesinato en segundo grado. Finalmente, explica que tras el jurado escuchar, observar y analizar el testimonio del Sr. Vázquez Rosado, emitieron un veredicto de culpabilidad. Ergo, el jurado descartó la teoría sobre legítima defensa.

El acusado tiene derecho a que se impartan instrucciones sobre todos los aspectos del derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad. *Pueblo v. Negrón Ayala, supra.* En ese sentido, el Tribunal Supremo ha sugerido que es buena práctica ajustar las instrucciones al jurado conforme al Manual de Instrucciones al Jurado. *Pueblo v. Velázquez Caraballo*, 110 DPR 369 (1980). Como tribunal apelativo, es necesario determinar la posible influencia que pueda tener **una instrucción solicitada y no ofrecida** en la mente del Jurado. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 97 (2000). (Énfasis suplido).

La Regla 137 de Procedimiento Criminal dispone que "**Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud**". 34 LPRA Ap. II, R. 137. (Énfasis suplido). A esos efectos, el Tribunal Supremo ha enfatizado que, **resulta "tardío un planteamiento en apelación impugnando las instrucciones del juez al jurado** cuando la defensa no objeta dichas instrucciones **ni solicita instrucciones adicionales".** *Pueblo v. Romero Cuesta*, 101 DPR

404, 408 (1973). Es decir, si no se realiza una objeción oportuna a las instrucciones impartidas se renuncia a cualquier error en estas.

Sobre la instrucción del homicidio, el Tribunal Supremo estableció que no es necesario que la prueba resulte incontrovertida o concluyente, mientras haya un indicio de prueba a ese efecto. *Pueblo v. Galarza*, 71 DPR 557, 561 (1950). Este delito, presupone que el autor actuó movido por una provocación adecuada de tal naturaleza que lleve a una persona ordinaria a perder su dominio y actuar según sus impulsos mentales causados por la cólera, pendencia o emoción violenta. *Pueblo v. Negrón Ayala*, 171 DPR 406, 417 (2007).

Según surge de la Transcripción de la Prueba Oral, tras las partes dar por sometido su caso, el juzgador de instancia informó a las partes sobre las instrucciones que impartiría al Jurado conforme al Libro de Instrucciones al Jurado. En ese sentido, luego de detallar cada una de las disposiciones, expresó: "[l]as pueden examinar y entonces las demás sería a consideración de lo que las partes pidan".[5] Consecuentemente, **la defensa solicitó que impartiera la instrucción sobre legítima defensa**.[6] Así las cosas, el tribunal declaró Ha Lugar la petición de la defensa e impartió las instrucciones sobre la misma, conforme a la disposición 25.1 del Libro de Instrucciones al Jurado.[7] Igualmente, surge de la transcripción que:

> JUEZ: En cuanto a la instrucción por el Artículo 249 del Código Penal, el Ministerio Público ha hecho una propuesta o instrucción, se acoge la misma, incluyendo, eh, la temeridad. En cuanto al resto de las peticiones hechas, se declaran no ha lugar las mismas.[8]

Sobre ese particular, el juzgador de instancia expresó:

---

[5] *Íd.*, pág. 499. Véase, además, *Íd.*, págs. 497-498.
[6] *Íd.*, pág. 499. (Énfasis suplido).
[7] *Íd.*, pág. 501.
[8] *Íd.*, pág. 502. Según surge de la Minuta del 23 de julio de 2025, el Ministerio Público hizo una solicitud por escrito de otras peticiones que no fueron formalmente presentadas. Conforme se desprende del escrito, las mismas se harían formar parte del expediente.

> [JUEZ:] Artículo 249 del Código Penal. Cuando contra la persona acusada se ha presentado una acusación por el delito de riesgo a la seguridad u orden público al disparar un arma de fuego, la Ley dispone que por este delito la persona a propósito y con conocimiento la persona dispara un arma, a propósito, con conocimiento o temerariamente dispara un arma de fuego poniendo en riesgo la seguridad y orden público en un sitio público o abierto al público. **Les voy a leer en este momento el otro elemento subjetivo, que es temerariamente.** Una persona actúa temerariamente cuando es consciente de que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado y la circunstancia prohibida por ley y, a pesar de conocer el riesgo, la persona continua con su acción u omisión.  Al evaluar si era consciente del riesgo, deberán determinar si había previsto la posibilidad de que existiese ese riesgo. Al momento de evaluar un riesgo sustancial deberán considerar la probabilidad de que se produjera el daño, el resultado de las circunstancias y la magnitud del daño. Al evaluar el riesgo que les he indicado deberán considerar lo que motivó a la persona a incurrir en ese riesgo. Una circunstancia es una característica de la conducta de la persona que cometió el delito o de la víctima. También se refiere a la descripción del entorno o el contexto en el cual ocurre la conducta.[9] (Énfasis suplido).

De un breve análisis de las instrucciones realizadas, se desprende que el TPI claramente informó sobre el delito consignado en el Código Penal de Puerto Rico sobre riesgo a la seguridad u orden público al disparar un arma de fuego. Por último, al concluir con las instrucciones al jurado, el TPI les preguntó a las partes si tenían alguna objeción al respecto, a lo cual ambas partes contestaron en la negativa.[10]

Forzoso es concluir que el foro de instancia no cometió el primer y cuarto error. Analizada la prueba de la transcripción oral se desprende que el foro primario impartió las instrucciones tal cual surgen del Libro de Instrucciones al Jurado y el Código Penal vigente. Cabe destacar que la defensa tuvo la oportunidad de solicitar la instrucción sobre el delito menor incluido, más no lo hizo.

---

[9] *Íd.*, pág. 551-552.
[10] *Íd.*, pág. 558.
> Tribunal: En este momento le pregunto a los compañeros si tienen objeción a las instrucciones.
> LCDO. VAZQUEZ:   Ninguna.
> FISCALES:  Ninguna.

Notamos que del expediente ante nuestra consideración no surge alguna solicitud de la instrucción 5.12 sobre asesinato en segundo grado ante la acusación de asesinato en primer grado; modalidad a propósito o con conocimiento o de la instrucción 5.14 sobre el asesinato atenuado como delito menor incluido. Muy por el contrario, indicó que no tenía objeción sobre las instrucciones impartidas. Ante lo cual, el acusado renunció a cualquier planteamiento de error a nivel apelativo.

En su **tercer** señalamiento de error, el Apelante sostuvo que erró el TPI al no instruir al Jurado sobre el derecho del acusado a testificar a su favor. Argumentó que inicialmente, se impartió la instrucción preliminar de no hacer inferencias ni deducciones de los hechos que se ventilaron durante el proceso que se estaba celebrando. No obstante, en su instrucción final, expresó que el Jurado podrá llegar a las conclusiones o inferencias razonables, que estén justificadas a base de su propia experiencia. El Apelante insiste en que estas instrucciones tuvieron el efecto de que el Jurado no aquilatara o pidiera información sobre los delitos inferiores incluidos.

El Procurador General reitera que, ante la falta de una objeción oportuna, el Apelante no puede levantar un error en cuanto a una instrucción contradictoria. Empero, aun luego de examinado el planteamiento del Sr. Hernández Rodríguez, arguye que, el Tribunal instruyó correctamente al jurado en cuanto al derecho constitucional del acusado a no declarar y sobre la prohibición de tomar dicho silencio en su contra. Señala que, de las instrucciones impartidas surge expresamente que el tribunal informó al jurado sobre el derecho del acusado. Por lo cual, no procede tal señalamiento de error.

El Tribunal Supremo de Puerto Rico, ha expresado que la utilización del libro de instrucciones es discrecional. *Pueblo v.*

*Echevarría Rodríguez I*, 128 DPR 299 (1991). No obstante, ha reconocido que constituye una buena práctica su utilización en aras de disminuir las posibilidades de error en las instrucciones al jurado y de lograr mayor uniformidad en la administración de la justicia criminal. *Íd.* Las instrucciones que son impartidas según el manual están cobijadas por una presunción de corrección. *Pueblo v. Colón González*, 209 DPR 967, 987-988 (2022). Por lo tanto, se debe demostrar en efecto que la instrucción es errónea. *Pueblo v. Ortiz González*, 111 DPR 408 (1981).

Desde el comienzo, el juzgador de instancia les informó a las partes que estaría leyendo las instrucciones directamente del Libro de Instrucciones al Jurado. A saber: "Vamos a proceder, tan pronto estos lleguen a Sala, a leerles lo que son las instrucciones al Jurado desde la 1.1 hasta la 1.8".[11] Asimismo consta de la transcripción de la prueba oral la lectura de la Instrucción 1.2:

> [Juez:] Ustedes no pueden inferir, considerar ni especular que por esa razón es más probable que la persona acusada sea culpable o no culpable. Tanto el Ministerio Público como la persona acusada tienen el derecho de exigir, y así lo esperan, que ustedes consideren y evalúen toda la evidencia y apliquen la ley sin dejarse llevar por emociones para que lleguen a un veredicto justo sin importar su contexto.

Consecuentemente, el juzgador de instancia dio lectura a la instrucción 3.1 sobre evidencia directa y circunstancial; inferencias, a saber "[Juez:] Ustedes pueden llegar a las conclusiones e inferencias razonables que estén justificadas a base de su propia experiencia que surjan de los hechos que ustedes consideren o estimen probados".[12]

Una vez sometido el caso, se desprende que el juzgador de instancia instruyó al Jurado sobre su derecho a no declarar:

> [Juez:] En este caso el acusado no testificó. **Nuestra Constitución y la quinta enmienda de la Constitución de los Estados Unidos establecen el**

---

[11] *Íd.*, pág. 5.
[12] *Íd.*, pág. 541.

**derecho de un acusado a no declarar y a que su silencio no puede tomarse en cuenta ni comentarse en su contra al deliberar sobre su culpabilidad**. Ustedes deben **tener presente en sus deliberaciones que el acusado tiene el derecho a declarar o a no hacerlo, según su deseo.** También deben tener presente siempre que el hecho de no haber declarado no puede considerarse como un indicio o aceptación de sus deliberaciones, que a pesar de que el acusado no haya declarado, el Ministerio Público tiene la obligación de probar su culpabilidad más allá de duda razonable.[13]

Por lo cual resolvemos que el tercer señalamiento de error carece de méritos. En este caso, notamos que los procedimientos sobre instrucciones al jurado estuvieron gobernados por las disposiciones enmarcadas en el Libro de Instrucciones al Jurado. Cabe destacar que, el Apelante no señaló afirmativamente que la instrucción impartida fuera errónea. En ese sentido, tras examinar la totalidad de los procedimientos, encontramos que no existe un error o contradicción alguna que justifique la intervención de este Tribunal.

Por último, en su **segundo** planteamiento de error, el Apelante señala que erró el Jurado al emitir un fallo contradictorio, toda vez que se marcó simultáneamente la opción de culpable y no culpable. Por ende, sostiene que esto implica un veredicto de no culpabilidad. El Apelante fundamentó que, luego de un análisis de la boleta, el Tribunal la examinó y expresó que "hay uno que tiene un tachón, pero, creo que una vez se lea, se les va a preguntar a cada uno de ustedes si ese es el veredicto al cual se ha llegado". [14]

Por su parte, el Procurador General argumenta que del expediente no se desprende una ambigüedad, inconsistencia o contradicción real sobre el veredicto alcanzado por el jurado. Enfatiza que, bajo la discreción del tribunal, el juzgador de instancia corroboró con el jurado cuál fue su veredicto, previo a la aceptación.

---

[13] *Íd.*, pág. 544.
[14] *Íd.*, pág. 576.

Ante lo cual, no existe fundamento alguno para intervenir con tal determinación.

La Regla 151 de Procedimiento Criminal establece que:

Cuando el jurado hubiere rendido un veredicto**, a requerimiento de cualquier parte o a instancias del propio tribunal, tal veredicto deberá ser comprobado en cuanto a cada miembro del jurado.** Si como resultado de esta comprobación se determinare que el veredicto no fue rendido, al menos, por nueve miembros del jurado, se le podrá ordenar al mismo retirarse a continuar sus deliberaciones o podrá ser disuelto. 34 LPRA Ap. II, R. 151. (Énfasis suplido).

Ahora bien, la jurisprudencia establece que "el Tribunal tiene discreción en cuanto a la forma de hacer la comprobación". *Pueblo v. Ruiz Torres*, 99 DPR 830, 831-832 (1971). El acusado debe solicitar oportunamente la comprobación o *polling* individual de cada uno de los miembros del Jurado previo a que sea pronunciado el fallo. *Jaca Hernández v. Delgado*, 82 DPR 402 (1961).

Conforme surge de la transcripción de la prueba oral, el juzgador de instancia expresó que:

El Tribunal examin[ó] los mismos y entiende que son conforme a derecho. Eh- Voy a pedirle a la señora secretaria que los lea. Hay uno que tiene un tachón, pero, creo que una vez se lea, se les va a preguntar a cada uno de ustedes si ese es el veredicto al cuál se ha llegado.[15]

Más adelante se verbalizó que:

**JUEZ:  Les pregunto a las damas y caballeros del Jurado si en eso consiste el veredicto al cual han llegado en la tarde de hoy.**
**JURADO: Sí, así es.**
**JUEZ: Así entonces debe surgir.  Indico que se acepta por ser conforme a derecho.**[16] (Énfasis suplido).

Conforme fuera adelantado en la jurisprudencia, un tribunal tiene discreción para determinar de qué forma se comprueba el veredicto alcanzado. De un breve análisis se desprende que, ante la existencia de una tachadura sobre el veredicto del Art. 6.05 de la

---

[15] *Íd.*, pág. 576.
[16] *Íd.*, pág. 578.

Ley de Armas, el juzgador de instancia decidió que haría una corroboración del veredicto. Al así hacerlo, de manera general corroboró el veredicto, cuya respuesta fue en la afirmativa. De acuerdo a ello, el Jurado encontró al Sr. Hernández Rodríguez culpable del Art. 6.05 de la Ley de Armas. En vista de que no existe un procedimiento detallado para realizar la comprobación del veredicto, concluimos que no se cometió el segundo error. Pues el efecto de corroborar de manera general en corte abierta tuvo el resultado de subsanar la tachadura en el papel. Así las cosas, el acusado no demostró que el Jurado hubiese emitido un veredicto inconsistente, ambiguo o contradictorio que invalide la determinación.

**IV.**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera Marchand concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones